# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# FLORENCE DIVISION

| | | |
|---|---|---|
| Michael Bland, individually and as Personal Representative of the Estate of Bryon Joseph Bland, | ) ) ) | C/A No: |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | (42 U.S.C. § 1983) |
| vs. | ) | (Jury Trial Demanded) |
| | ) | |
| George L. Johnson, J. West, H. Johnson, T. Dewitt, Ofc. Donovan, Jade Pike, Michael Smith, Joseph Elliott, Shakema Young, Lcpl. Crawford, Tyler Wescott, Susan Stafford, Caleb Primm, Pete Forney, Kevin Adkins, Joey Johnson, Wayne Owens, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## JURISDICTION

1.      This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2.      Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3.      The Plaintiff, Michael Bland, is a citizen and resident of the County of Horry,
State of South Carolina. As the natural mother of the decedent, he is the properly appointed
Personal Representative of the Estate of Bryon Joseph Bland by Order of the Horry County
Probate Court dated October 4, 2019 under case number 2017-ES-26-019272.

4.      This suit is filed on behalf of the heirs of Bryon Joseph Bland.

5.      At all times mentioned in the Complaint, the Defendant J. West was a supervisor,
administrator, and/or employee of the City of Myrtle Beach Police Department who supervised
others at the City of Myrtle Beach Police Department and/or Jail. At all relevant times
hereinafter mentioned these Defendants were acting individually as employees and/or
administrators of the City of Myrtle Beach Police Department. For purposes of claims asserted
under 42 U.S.C. § 1983, this Defendant is being sued in his individual capacity, under the color
of state law. Upon information and belief, this Defendant either had direct contact with the
decedent, had direct knowledge of his medical condition (including his need for medical care), or
supervised others who had direct contact with him.

During the time period in question, the Plaintiff/decedent's Constitutional rights were
well established and well known to each of the Defendants listed above, including and not
limited to, the decedent's right to appropriate medical care and due process. Additionally, these
Defendants had actual and/or constructive knowledge that their subordinates were engaged in
conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent.
Further, the response of these Defendants to that knowledge was so inadequate as to show
deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and

2

there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

6.     Upon information and belief (during the time period set out below) Defendants George L. Johnson, H. Johnson, T. Dewitt, Ofc. Donovan, and Jade Pike, were Officers of the City of Myrtle Beach Police Department who had direct contact with the decedent and became aware of his serious medical condition. Prior to his death, these Defendants had the obligation and the opportunity to secure the appropriate medical care and treatment, refrain from utilizing physical cruelty and to afford the decedent due process. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate medical care. A more detailed description of the Defendants' actions are set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care. For purposes of claims asserted under 42 U.S.C §1983, these Defendants are being sued in their individual capacity under the color of state law.

7.     At all times mentioned in the Complaint, the Defendants Director Wayne Owens, Major Joey Johnson, Capt. Susan Stafford, Lt. Kevin Adkins, Sgt. Pete Forney, Cpl. Caleb Primm, and Lcpl. Crawford were supervisors, administrators, and/or employees of the Horry County Sheriff's Office who supervised others at the Horry County Detention Center. At all relevant times hereinafter mentioned these Defendants were acting individually as employees and/or administrators of the Horry County Detention Center. For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity, under the color of state law. Upon information and belief, these Defendants either had direct contact with

3

the decedent, had direct knowledge of his medical condition (including his need for medical care), or supervised others who had direct contact with him.

During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care and due process. Additionally, these Defendants had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

8.     Upon information and belief (during the time period set out below) Defendants Jade Pike, Michael Smith, Joseph Elliott, Shakema Young, and Tyler Wescott, were Correctional Officers at the Horry County Detention Center who had direct contact with the decedent and became aware of his serious medical condition. Prior to his death, these Defendants had the obligation and the opportunity to secure the appropriate medical care and treatment, refrain from utilizing physical cruelty and to afford the decedent due process. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate medical care. A more detailed description of the Defendants' actions are set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care. For purposes of claims asserted

under 42 U.S.C §1983, these Defendants are being sued in their individual capacity under the color of state law.

9.    The allegations set forth in this Complaint occurred in Horry County; therefore, venue is proper in this District.

## FACTS

10.    The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants while in the custody of and/or incarcerated at the City of Myrtle Beach Police Department/Jail and the Horry County Detention Center.

11.    Prison officials have a federal constitutional duty (under the 8th Amendment) to protect detainees from probable foreseeable harm. In this case the Plaintiff is informed and believes that (a) the arresting officers and prison officials knew or should have known that the decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants consciously failed to take reasonable measures to abate the risk; and (c) the decedent suffered serious injuries and death as a direct result thereof.

12.    On or about May 28, 2017, while conducting a residence sweep, Defendant George Johnson found Bryon Bland (hereinafter "decedent"), lying face down on the floor of a bedroom with no shirt on and his pants around his knees. Defendant G. Johnson documented in his incident report that the decedent "was out of it and would zone out as I was talking to him." Upon questioning, the decedent did inform Defendant G. Johnson that he had very recently used heroin and drug paraphernalia was found in the bedroom. The decedent was then placed under arrest by Defendant G. Johnson; however, instead of ensuring that the decedent received the emergent medical help he required for an obvious, serious medical condition, Defendant G.

Johnson transported the decedent to the Myrtle Beach Police Department Jail. This emergent assistance required would have been taking him to the closest hospital or calling EMS for assistance. A Jail Medical Screen History Report performed by Defendant H. Johnson indicated the decedent's use of heroin earlier that day, and that he was placed on a Medical Alert.

13.    The Plaintiff is informed and believes that the Warden and above-named administrators (listed in paragraphs 5 and 7) at the City of Myrtle Beach Police Department and Horry County Detention Center had entered into a pattern and practice of failing to provide the adequate and/or specific number of properly trained officers at numerous locations throughout each facility. Further, the administrators, employees and detention staff of Horry County Detention Center knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the detainee population – to include and not be limited to contraband and failing to recognize an detainee (such as the decedent) with a serious medical condition requiring emergent medical care

14.    Prior to the events in question, each of the individual Defendants had received training to recognize when a detainee had a serious medical condition which required emergent medical care. Additionally, these Defendants had received training that required them to ensure that the detainees needing such medical care received it in an emergent fashion. In this case, the Defendants consciously failed to take the actions even though they were trained to provide. Further, even without training, the individual Defendants (who had contact with the decedent) should have easily been able to recognize that he had a serious medical condition which required emergent medical care.

15.    The Plaintiff is informed and believes that, based on statements given to SLED, Defendant Jade Pike was working a special detail at the Myrtle Beach Police Department jail on

May 28, 2017 and saw the decedent when he was originally brought in to the city jail facility.

Further, Defendant Pike stated that she spoke to the decedent at that time who informed her that

he would soon be going through detox from heroin and alcohol. The following day (May 29,

2017), DO Pike was working in the booking unit booking at the County Detention Center when

the decedent was brought into that facility by Defendants T. Dewitt and Ofc. Donovan.

16.      However, instead of completing the booking process (which should have

included a full and complete medical screening) at the time that the decedent entered the

Detention Center, the decedent was searched, changed into a jail uniform and placed into a

holding cell. This occurred at approximately 10:40pm. It is my understanding that detainees held

within these holding cells are to be checked on (at a minimum) every thirty (30) minutes by

security staff. Defendant Pike put in her statement to SLED that she attempted several times to

get the decedent out of the holding cell to finish his booking process but that the decedent

refused, stating that he did not feel well due to going through detox/withdrawal.

17.      Prior to and during the time period in question, the individual detention officers

(included in this Complaint) assigned to the decedent's unit/wing were required to perform

individual cell checks (checking on each and every detainee in the unit) at least once every thirty

(30) minutes. During these contacts the individual Defendants should easily have been able to

recognize that the decedent's overall physical and mental condition had drastically deteriorated

and that he required emergent medical care. Their continued conscious failure to provide life-

saving medical care during the time period in question is another example of their conscious and

deliberate indifference to the decedent's medical needs.

18.      Documentation from the Detention Center indicates that Defendant Pike

attempted to get the decedent out of the holding cell multiple times to complete the booking

process but that each time the decedent informed her that he did not feel well and was going through detox.

19.     At approximately 4:19am on May 30, 2017, Defendant Michael Smith entered the decedent's cell with a nurse due to complaints from other inmates that the decedent was vomiting profusely. The nurse documented that she "went to cell to check on patient. There were 4-5 people in cell all laying in the floor. There was greenish, yellow bile that was in the toilet which looked to be bile from drug use... I asked the Patient if he wanted to get up and get checked out and he shook his head no." The nurse then left the cell. According to Defendant Pike's statement to SLED, Defendant Pike informed the nurse at that time that the decedent had told her he was detoxing off of heroin and alcohol. The nurse "said OK and went back toward her office."

20.     At approximately 6:32am on May 30, 2017, Defendant Joseph Elliott entered the decedent's cell to serve breakfast; however, the decedent refused.

21.     Defendant Elliott entered the decedent's cell again at approximately 11:20am to serve lunch – which the decedent also refused.

22.     At approximately 2:00pm on May 30, 2017, while conducting a security check, Defendant Shakema Young opened the decedent's cell and had Defendant Lcpl. Crawford enter to check on him. Defendant Young told SLED that the decedent was laying on the floor and that there appeared to be vomit near his head; however, Defendant Crawford said that the decedent appeared to be sleeping and breathing, so the cell door was closed and the decedent was not touched. Based on the appearance of vomit near his body, these Defendants should have ensured that the decedent was seen by medical personnel or sent to the closest hospital.

23.     Defendant Tyler Wescott performed a security check of the decedent's call at approximately 2:30pm on May 30, 2017 also indicated that he recalled seeing vomit within the decedent's cell but felt confident that the decedent was still alive at that time. Based on the appearance of vomit near his body, these Defendants should have ensured that the decedent was seen by medical personnel or sent to the closest hospital.

24.     On or about May 30, 2017 at approximately 3:30pm, the decedent was found unresponsive in his cell by Defendant Elliott. First responders were called (to include Defendants Wescott, Primm, Stafford) and CPR was initiated. The decedent is noted to have had a discolored face and that yellow and black fluid was underneath the body. EMS was notified and arrived on the scene at approximately 4:00pm. Their run report notes "patient is extremely cold in his upper and lower extremities. Lividity is noted around his neck. Patient is found to be in asystole on the monitor. Due to the patient's condition and no response in CPR, medical control is called. Dr. O'Shea from Grand Strand is contacted and advised of the same." Per Dr. O'Shea, CPR is discontinued and time of death is given as 4:04pm.

25.     An autopsy was held on May 31, 2017 gives the cause of death was drug induced cardiac arrhythmia and cardiomyopathy, dilated type.

26.     All Defendants (including all supervisory staff) had more than sufficient knowledge of the decedent's condition and they all acted in blatant disregard of the health and life. These Defendants had direct contact with the decedent (during the time period in question) or supervised those who had direct contact with him. Further, these Defendants had the opportunity and obligation to secure the appropriate medical treatment and care for the decedent. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to recognize and secure the appropriate medical care and/or treatment which

would have included proper assessment, evaluation and medications. Based directly on their actions or inactions, the decedent suffered needlessly (both physically and mentally) and died on May 30, 2017.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

27.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

28.    The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as officers and/or supervisors of the City of Myrtle Beach Police Department and the Horry County Detention Center and had certain duties imposed upon them with regard to Bryon Bland. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to proper medical care and to be free from cruel and unusual punishment.

29.    The Defendants were consciously and deliberately indifferent to the decedent and the Plaintiff on or around May 28, 2017 through May 30, 2017 in the following particulars:

(a)    in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)    in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)    in entering into a pattern and practice of failing to provide appropriate medical care;

(d)    in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)    in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f)    in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g)    in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)    in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i)    in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)    in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(k)    in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

11

(l)     in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(m)     in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(n)     if said procedures do exist, in consciously failing to follow same;

(o)     in abandoning the decedent when he was in desperate need for medical care;

30.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the decedent suffered needlessly and ultimately died.

31.     As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotions distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

32.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

33.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as officers and/or supervisors of the City of Myrtle Beach Police Department and the Horry County Detention Center and had certain duties imposed upon them with regard to Bryon Bland. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to medical care and to be free from cruel and unusual punishment.

34.     The Defendants were consciously and deliberately indifferent to the decedent and Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)     in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(d)     in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(e)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

13

(f)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(g)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(h)     in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(i)     in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(j)     in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k)     in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(l)     if said procedures do exist, in consciously failing to follow same;

(m)     in abandoning the decedent when he was in desperate need for medical care;

35.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

36.     The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Bryon Bland by their acts and omissions as described above.

37.     As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

38.     The Plaintiff is informed and believes that the Estate of Bryon Joseph Bland is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

39.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(SURVIVAL)**

40.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

41.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the City of Myrtle Beach Police Department and the Horry County Detention Center and had certain duties imposed upon them with regard to Bryon Bland. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

42.     The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

     (a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

     (b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

     (c)     in punishing the decedent without the opportunity of due process;

     (d)     in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

16

(e)     in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(f)     in knowingly, deliberately and consciously denying the decedent's right to due process prior to administering punishment in the way of cruel and unusual punishment;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)     in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(k)     in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(l)     in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(m)     in entering into a pattern and practice of failing to provide due process to its

detainee population, including the decedent;

(n)     in consciously failing to have the proper policy and procedures necessary to

ensure that detainees are provided basic and/or appropriate medical care;

(o)     if said procedures do exist, in consciously failing to follow same;

(p)     in abandoning the decedent when he was in desperate need for medical care;

43.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

44.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the decedent, loss of support, mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(WRONGFUL DEATH)**

45.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

46.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the City of Myrtle Beach Police Department and the Horry County Detention

18

Center and had certain duties imposed upon them with regard to Bryon Bland. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

47.     The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)     in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(d)     in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(e)     in knowingly, deliberately and consciously denying the decedent's right to due process prior to administering punishment in the way of cruel and unusual punishment;

(f)    in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(g)    in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(h)    in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(i)    in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j)    in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(k)    in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(l)    in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(m)    if said procedures do exist, in consciously failing to follow same;

(n)    in abandoning the decedent when he was in desperate need for medical care;

48.    As a direct and proximate result of the Defendants' acts of willful, malicious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered

deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution.

49.     The Defendants, jointly, severally and in combination thereof, wrongfully caused

the death of Bryon Bland by their acts and omissions as described above.

50.     As a direct and proximate result of the omissions, willful and wanton conduct of

the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and

judgment and experience.

51.     The Plaintiff is informed and believes that the Estate of Bryon Joseph Bland is

entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants,

pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

52.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of

his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent,

loss of his love and support, mental anguish, emotional distress, incurred funeral expenses,

attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions

now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE

DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the <u>Constitution of the United States of America</u>.

*__s/ C. Carter Elliott, Jr.____*
C. Carter Elliott, Jr.
U.S.D.C. Bar #: 5423
Elliott, Phelan & Kunz, LLC
17 ½ Screven Street
P.O. Box 1405
Georgetown, SC  29442
(843) 546-0650 (phone)
(843) 546-1920 (fax)
carter@elliottphelanlaw.com

May 26, 2020
Georgetown, South Carolina